**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Lorenzen*, 25-cv-1933<br>*McCracken*, 25-cv-1805<br>*Dahl*, 25-cv-1902 | **DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND** |

## INTRODUCTION

Plaintiffs Marlin Lorenzen, William McCracken, and David Dahl do not dispute that their lawsuits were filed outside of the applicable South Dakota statute of limitations. Instead, they argue that the doctrine of fraudulent concealment should apply to toll the limitations period and save their claims. Recognizing that they have not properly pled fraudulent concealment, they request permission to amend their complaints to add specific factual allegations to satisfy the pleading standard. Plaintiffs Lorenzen, McCracken, and Dahl have all filed a Proposed Amended Complaint ("PAC") along with their respective Motions to Amend, and the PACs demonstrate that granting leave to amend would be futile for two reasons. First, the PACs fail to adequately plead fraudulent concealment pursuant to Federal Rule of Civil

Procedure 9(b). Second, even if fraudulent concealment were pled as required, this Court has previously concluded that accrual of the statute of limitation is tolled only until the onset of infection, at which time a plaintiff is on inquiry notice to discover their claims.[1] Because the PACs allege that that Lorenzen, McCracken, and Dahl were diagnosed with infections more than five years before filing suit, their claims are untimely as a matter of law, and any attempt to amend would be futile.

Accordingly, 3M's MJOP should be granted, and Lorenzen, McCracken, and Dahl's individual Motions for Leave to Amend, (*Lorenzen*, No. 25-cv-1933, Dkt. No. 14; *McCracken*, No. 25-cv-1805, Dkt. No. 16; and *Dahl*, No. 25-cv-1902, Dkt. No. 16) should be denied.

## ARGUMENT

### I. 3M's MJOP Is Neither Procedurally Improper Nor Premature.

Plaintiffs' assertion that 3M's MJOP is an "attempt to circumvent" PTO 1, PTO 4, PTO 8, and PTO 22 is unavailing. (*See* Joint Memorandum in Opposition to Defendants' MJOP, MDL Dkt. 3319, hereinafter "Opposition" or "Opp." at 4-5.). While Plaintiffs note that PTO 1 stays individual discovery, this has no bearing on the MJOP, which is decided solely on the pleadings and

[1] *See Skinner v. 3M Company*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025).

requires no discovery. PTOs 4 and 8 have no relevance here. PTO 4 set a schedule of deadlines for pleadings and dispositive motions in 2016, before Plaintiffs' cases were even filed. PTO 8 refers back to those deadlines as they relate to any Rule 12(b)(6) motions directed at the master pleadings. Regarding the dispositive motion schedule in PTO 22, Plaintiffs misinterpret the order. PTO 22 sets deadlines for general causation summary judgment motions and bellwether case-specific summary judgment motions, but neither deadline applies here because the MJOP does not fall into either category. Further, until 3M began filing Rule 12(c) motions directed at facially untimely claims, no Plaintiffs had previously advocated for an interpretation of PTO 22 that precludes all dispositive motion practice, even though the Court has established protocols to address claims that are facially barred by the statute of limitations and has expressly contemplated motion practice for such claims. (*See* 3/29/2019 Categorization Order, MDL Dkt. 1875 (establishing a protocol for identifying cases that should be dismissed as untimely); 5/17/2019 Revised Categorization Order, MDL Dkt. 1922 (revising the protocol)). As Plaintiffs acknowledge, "no scheduling order exists" for their cases (Opp. At 6.), and therefore there is no basis to argue that the MJOP is untimely.

Moreover, PTO 22 allows for modifications to its schedule "upon a showing of good cause as required by Local Rule 16.3." (PTO 22 at 1.) The good cause standard under Local Rule 16.3 is consistent with the good cause

standard applicable under Federal Rule of Civil Procedure 16(b). *See IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018). Determining whether good cause exists is within the Court's discretion based upon consideration of the diligence of the party seeking to modify the scheduling order and any other relevant factors. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019). Here, good cause justifies allowing the MJOP and similar motions, because the MDL inventory is littered with cases that are facially untimely, and pleading-based motion practice is an efficient means to identify and dismiss such cases. Denying 3M's MJOP at this juncture would only waste the resources of the Court, the parties, and transferee courts. In short, even were there a procedural defect regarding the MJOP's timing (and there is not), good cause exists to excuse any technical deficiency and adjudicate the MJOP on its merits.

## II. Plaintiffs' Request for Equal Treatment with Remand Plaintiffs is Unpersuasive.

Plaintiffs further argue that the Master Complaint and Short Form Complaints are merely "administrative devices" or that plaintiffs in remanded cases have the unfettered right to amend their pleadings and conduct discovery, and therefore, they should have the same opportunities. (*See* Opp. at 5-8). By filing their Motions to Amend and PACs, Plaintiffs have nullified any argument that adjudicating the MJOP unfairly deprives them of an

opportunity to amend their pleadings. Furthermore, as discussed more fully below, the Motions to Amend and PACs confirm that Plaintiffs' claims are untimely as a matter of law and ***cannot be amended*** to state a plausible claim against 3M, further undermining any suggestion that the MJOP is procedurally improper or premature.

## III. Plaintiffs' Argument for Judicial Efficiency Does Not Justify Denial of 3M's MJOP.

Plaintiffs' purported concern about judicial efficiency—*i.e.*, that adjudicating the MJOP will open the "floodgates" for additional motion practice (Opp. at 8) just reinforces the need for 3M's MJOP. Plaintiffs in this MDL have elected to file hundreds (if not thousands) of cases that are facially time-barred, and Plaintiffs continue to pursue those meritless cases with impunity, unfairly burdening both the Court and 3M. Judicial efficiency is best supported by litigants voluntarily dismissing cases that are facially time-barred (or, even better, never filing them in the first place). If Plaintiffs in this litigation will not voluntarily screen their inventories and cull meritless cases from the MDL docket, Plaintiffs leave 3M with little choice but to file these motions.

## IV. Plaintiffs Should be Denied Leave to Amend Because Their Proposed Amendments are Futile.

A court may deny leave to amend a complaint where amendment would be futile. *E.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th

Cir. 2018). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). This includes where the amended claim would be barred by the applicable statute of limitations. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Plaintiffs assert that 3M "cannot argue futility" because the PACs "contain[] many more facts and details than the Master Complaint in the MDL which the Defendants never once asserted was deficient." (*See* Memoranda in Support of Motions to Amend, *Lorenzen* Dkt. 14 at 8; *McCracken* Dkt. 16 at 8; *Dahl* Dkt. 16 at 8.) But that argument misses the point. Futility must be determined based on the sufficiency of the allegations in the PACs and is not dependent upon whether 3M previously challenged the Master Complaint. Here, the PACs demonstrate that amendment is futile for two reasons: (1) Plaintiffs' proposed allegations are insufficient to plead fraudulent concealment for purposes of tolling the statute of limitations in these specific

cases; and (2) even if Plaintiffs could take advantage of tolling under the fraudulent concealment doctrine, any tolling would cease upon the date they were diagnosed with an infection. Because the PACs plead that Lorenzen, McCracken, and Dahl were diagnosed with infections more than five years before filing suit, their proposed amendments are futile.[2]

### A. Plaintiffs Fail to Adequately Plead Fraudulent Concealment.

A plaintiff seeking to toll the statute of limitations based on fraudulent concealment must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880; *see also id.* at 881 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.").

Under South Dakota law, the plaintiff must show "(1) the [defendants] knowingly concealed material facts that constitute plaintiffs' causes of action

[2] Plaintiffs do not dispute that their personal injury and fraud-based claims are subject to a three-year statute of limitations, or that their breach of warranty and consumer protection claims are governed by four-year statutes of limitations not subject to the discovery rule.

or, being fiduciaries, knowingly remained silent and failed to disclose those facts despite a duty to do so; (2) plaintiffs exercised due diligence in attempting to discover their causes of action; and (3) despite plaintiffs' due diligence, the [defendants'] concealment prevented plaintiffs from discovering their causes of action." *Eagleman v. Diocese of Rapid City*, 862 N.W.2d 839, 850 (S.D. 2015). Plaintiffs' PACs fall short of these standards.

As an initial matter, the PACs do not contain any allegations addressing when or how Plaintiffs purportedly discovered 3M's alleged fraud. The Plaintiffs' PACs contains general allegations about how they each allegedly discovered that a Bair Hugger system was used in their respective surgeries, but they provide no detail about how they allegedly discovered that 3M had engaged in purportedly fraudulent conduct. (*See Lorenzen* PAC ¶ 40 ("It was not until after the statute of limitations had run that Plaintiff first learned the Bair Hugger was capable of causing an infection[.] . . . Upon learning this, Plaintiff promptly retained counsel, who obtained the medical records confirming the Bair Hugger was used in Plaintiff's joint replacement surgery."); *McCracken* PAC ¶ 40; *Dahl* PAC ¶ 40.) Without this essential detail, Plaintiffs have not pled fraudulent concealment with the requisite particularity. *See Summerhill*, 637 F.3d at 880-81.

Moreover, the allegations in the PACs are insufficient as a matter of law to demonstrate fraudulent concealment. Plaintiffs make the same allegations,

accusing 3M of knowing and failing to warn against certain alleged risks associated with the Bair Hugger system and concealing these risks through certain "misrepresentations to the public, the medical community, and the FDA." (*See Lorenzen* PAC ¶¶ 138, 119-65; *McCracken* PAC ¶¶ 138, 119-65; *Dahl* PAC ¶¶ 138, 119-65.) Plaintiffs make similar allegations that 3M's alleged affirmative acts prevented Plaintiffs, even in the exercise of due diligence, from discovering the facts necessary to file suit within the applicable statute of limitations period. (*See Lorenzen* PAC ¶¶ 162-64; *McCracken* PAC ¶¶ 162-64; *Dahl* PAC ¶¶ 162-64.) But none of the Plaintiffs make specific allegations demonstrating: (1) that any particular statement was directed to or heard by Plaintiffs or their medical providers, including the who, what, where, when, and how of any such statement; (2) that 3M knew of Plaintiffs' existence, their injuries, or that a Bair Hugger system was used in their individual surgeries; (3) that 3M took any specific action designed to deceive any particular Plaintiff or their particular medical providers; (4) or how specifically 3M's statements prevented Plaintiffs from timely filing their claims. Such specific details are essential to pleading fraudulent concealment, and without them, Plaintiffs have not established that fraudulent concealment applies to toll their claims. *See, e.g., Summerhill*, 637 F.3d at 880 (affirming that fraudulent concealment must be pled with particularity under Rule 9(b), including the "who, what, when, where, and how" of the alleged fraud).

In addition, in support of their allegations of fraudulent concealment, Plaintiffs rely on testimony and other statements purportedly made by 3M representatives during the pendency of this MDL, as well as publications that post-date the formation of the MDL and statements "currently" on 3M's website. (*See, e.g.*, *Lorenzen* PAC ¶¶ 129-32, 140, 143, 145, 149 (discussing MDL testimony); ¶¶ 134, 147 (discussing 2018 publication); ¶ 153 (discussing 2019 publication); ¶¶ 139, 142, 144 (discussing statements "currently" on 3M's website); *McCracken* PAC ¶¶ 129-32, 140, 143, 145, 149 (discussing MDL testimony); ¶¶ 134, 147 (discussing 2018 publication); ¶ 153 (discussing 2019 publication); ¶¶ 139, 142, 144 (discussing statements "currently" on 3M's website); *Dahl* PAC ¶¶ 129-32, 140, 143, 145, 149 (discussing MDL testimony); ¶¶ 134, 147 (discussing 2018 publication); ¶ 153 (discussing 2019 publication); ¶¶ 139, 142, 144 (discussing statements "currently" on 3M's website).) These are irrelevant because the formation of the MDL in December 2015 effectively terminated the possibility that 3M could have fraudulently concealed any cause of action from any plaintiff. *See, e.g., City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL"), *appeal filed*, No. 25-1258 (1st. Cir. Mar. 26, 2025).

For all of these reasons, Plaintiffs fail to adequately plead fraudulent concealment in their PACs. As a result, fraudulent concealment does not operate to save their untimely claims, and the proposed amendments would be futile. The Court should therefore deny Plaintiffs' motions for leave to amend.

### B. Any Alleged Tolling of the Statute of Limitations Ended When Plaintiffs Were First Diagnosed with a PJI.

Under South Dakota law, even where the fraudulent concealment doctrine may apply to toll the statute of limitations, "fraudulent concealment only tolls the statute of limitations 'until the cause of action is discovered or might have been discovered by the exercise of diligence.'" O*ne Star v. Sisters of St. Francis, Denver, Colo.*, 752 N.W.2d 668, 682 (S.D. 2008) (quoting *Hinkle v. Hargens*, 76 S.D. 520, 524 (S.D. 1957)). Indeed, "fraudulent concealment will not toll the period of limitation beyond the moment 'the claim is discovered or might have been discovered with reasonable diligence'" *Gades v. Meyer Modernizing Co., Inc.*, 865 N.W.2d 155, 160 (S.D.2015) (quoting *Strassburg v. Citizens State Bank*, 581 N.W.2d 510, 515 (S.D. 1998)).

This Court has already concluded in *Pelican*, *Jones*, and *Skinner* that the onset of a plaintiff's infection is sufficient to put a plaintiff on inquiry notice to discover their cause of action. In *Pelican*, for example, the Court applied Louisiana law and found that the statute of limitations began to run after the first of the plaintiff's revision surgeries, noting that plaintiff "could have

requested and reviewed his medical records at any time after he developed a [PJI] and underwent, in June 2016, the first of five revision surgeries." *Pelican*, No. 23-cv-1818, Dkt. 136 at 5; *see also Jones v. 3M Company*, et al., No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (reaching the same conclusion). In *Skinner*, the Court applied Iowa law, finding that the statute of limitations began to run upon diagnosis of the infection, reasoning that the plaintiff was on inquiry notice because "[a]t any time after he was diagnosed with a [PJI] in March 2012, [Skinner] could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers." *Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 at 6-7 (Sept. 12, 2025).

The same reasoning applies here with respect to fraudulent concealment. At the time Plaintiffs were first diagnosed with a PJI, they could have discovered their causes of action through reasonable diligence. Specifically, they could have requested their medical records and obtained medical and legal assistance to evaluate the cause of their infections. Lorenzen developed an infection following his index surgery and underwent an irrigation and debridement procedure on September 14, 2018. (*Lorenzen* PAC ¶¶ 31-32.) Similarly, McCracken and Dahl both developed infections after their respective index surgeries and underwent irrigation and debridement procedures on

March 18, 2019[3] and May 25, 2019, respectively. (*McCracken* PAC ¶¶ 31-32; *Dahl* PAC ¶¶ 31-32.) Nevertheless, Lorenzen waited nearly seven years to file his initial complaint, McCracken waited over seven years, and Dahl waited nearly six years. Plaintiffs have not alleged facts to establish that they acted with due diligence, nor do they explain how any alleged fraudulent concealment prevented them from timely filing their complaints. Any tolling based on fraudulent concealment ended when Plaintiffs were diagnosed with their infections. For each Plaintiff, that occurred well outside the limitations period. As a result, Plaintiffs' claims are untimely as a matter of law, and any attempt to amend their complaints would be futile.

### C. Questions Related to Statute of Limitations and Fraudulent Concealment May Be Resolved by the Court.

Plaintiff further argues that questions related to the statute of limitations and fraudulent concealment must be decided by a jury. (*See* Opp. at 9-11.) To support this contention, Plaintiff relies on *Strassburg v. Citizens State Bank* and cites the court's decision to leave certain questions of fact related to the statute of limitations and fraudulent concealment for the jury.

[3] McCracken's original complaint alleges that his index surgery took place on July 15, 2018, and he was first underwent a revisionary procedure on July 19, 2018. (*See McCracken* Complaint ¶¶ 7, 9.) However, his PAC alleges that his index surgery took place on February 18, 2019, and his first revisionary procedure took place on March 18, 2019. (*See McCracken* PAC ¶¶ 31-32.) For the purposes of this analysis, the dates provided in the PAC are utilized.

(*See* Opp. at 10.) However, this holding is taken out of context and incorrectly applied as a hardline rule rather than a case-specific finding. Indeed, the court in *Strassburg* even recognized that if there are no genuine issues of material facts, then a case can be decided through a dispositive motion. 581 N.W.2d at 513 ("[W]e must ascertain whether there is any genuine issue of material fact concerning the date the cause of action accrued; if not, and if the applicable limitations period has expired as a matter of law, then the [defendant] was entitled to summary judgment.").

Moreover, courts in South Dakota have granted dispositive motions where plaintiffs failed to present sufficient evidence of fraudulent concealment to toll the statute of limitations. *See, e.g., Cashman v. CHS, Inc.*, 2013 WL 2458621, at *4 (D.S.D. June 6, 2013) (granting defendants' motion for judgment on the pleadings where fraudulent concealment did not toll the statute of limitations because plaintiff "was aware of the basic operative facts of his cause of action"); *Mattson v. Rosebud Electric Cooperative*, 2025 WL 3208889, at *21 (D.S.D. Nov. 17, 2025) (dismissing plaintiffs' claim and finding plaintiffs were not entitled to tolling of the applicable statute of limitations because of their failure to adequately allege fraudulent concealment). Therefore, Plaintiffs' statement that the "Court need not look any further that [sic] the South Dakota Supreme Court's analysis in *Strassburg v. Citizens State*

*Bank*" (Opp. at 11) is unfounded and misguided, and questions of statute of limitations and fraudulent concealment need not be left for a jury to decide.

## V. Any Tolling Agreement Between 3M and Plaintiffs Does Not Preserve "Fraud-Based" Claims.

Plaintiffs rely on a tolling agreement between the parties to preserve Lorenzen and McCracken's "fraud-based" claims from South Dakota's six-year statute of limitations. (*See* Opp. at 12.) However, as 3M established in its opening brief, *all* of Plaintiffs' claims, including any claims based in fraud, are subject to South Dakota's three-year statute of limitations for product liability. *See* Memorandum in Support of Defendants' Motion for Judgment on the Pleadings, at 11 (MDL Dkt. 3269); *Harms v. Cigna Ins. Companies*, 421 F. Supp. 2d 1225, 1230 (D.S.D. 2006) (finding that "the appropriate limitations period by focusing on the nature of the cause of action or the right sued upon (and not the form of the action)"(internal quotations omitted)); *Bruske v. Hille*, 1997 S.D. 108, ¶ 13, 567 N.W.2d 872, 876 (prohibiting plaintiff from characterizing a medical malpractice claim as a fraud claim in order to "shift to a more beneficial statute of limitations").

Moreover, while Plaintiffs rely on the tolling agreement to argue that their fraud claims are timely if the Court determines that the six-year limitations period for fraud claims applies, they do not actually counter 3M's claim that the three-year statute of limitations period for product liability

claims should apply. (*Compare* Memorandum in Support of Defendants' Motion for Judgment on the Pleadings, at 11 (MDL Dkt. 3269) (arguing the three-year period applies to all Plaintiffs' claims), *with* Opp., *passim* (failing to respond).) Nor do they respond to 3M's argument that their fraud claims should all be dismissed because Plaintiff failed to plead them with particularity. (*Compare* Memorandum in Support of Defendants' Motion for Judgment on the Pleadings, at 18-19 (MDL Dkt. 3269) (arguing Plaintiffs failed to plead fraud claims with particularity), *with* Opp., *passim* (failing to respond).) As a result, Plaintiffs have waived any challenge to the application of the three-year statute of limitations and have effectively conceded their fraud claims were not pleaded with particularity as required by Rule 9(b). *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) (finding "failure to oppose a basis for summary judgment constitutes waiver of that argument"); *Marin v. Wells Fargo, N.A.*, 2021 WL 5049111, at *11 (D.S.D. Sept. 27, 2021) (finding plaintiffs failure to address defendant's argument in motion to dismiss "waived any argument to the contrary"). Therefore, the claims were time-barred before any tolling agreement was reached, and Plaintiffs' failure to address these arguments in their opposition

constitutes a waiver of any challenge to the application of the three-year statute of limitations or that the fraud claims were adequately pled.[4]

## CONCLUSION

For the foregoing reasons and those outlined in 3M's Motion for Judgment on the Pleadings, Lorenzen's, McCracken's, and Dahl's claims are time-barred as a matter of law, and no amendment can change that result. Accordingly, 3M's Motion for Judgment on the Pleadings should be granted as to Plaintiff Marlin Lorenzen, William McCracken, and David Dahl. In addition, Lorenzen's, McCracken's, and Dahl's Motions for Leave to Amend should be denied.

---

[4] Plaintiffs also failed to respond to 3M's arguments that Plaintiffs' Minnesota consumer protection claims and unjust enrichment claims all fail as a matter of law. (*Compare* Memorandum in Support of Defendants' Motion for Judgment on the Pleadings, at 15-17 (MDL Dkt. 3269) (arguing Plaintiff's unjust enrichment and Minnesota consumer protection claims fail), *with* Opp., *passim* (failing to respond).) As a result, the Court should find Plaintiffs conceded these issues as well.

Respectfully submitted,

Date: February 13, 2026

*s/John P. Mandler*

John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***